**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| **PHAEDRA PRESTON,** individually and on behalf of all other similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>**WORLD TRAVEL HOLDINGS, INCORPORATED**,<br><br>                    Defendant. | Case No.:<br><br>Hon.<br><br>Mag. |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Phaedra Preston ("Plaintiff), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant World Travel Holdings, Incorporated ("WTH" or "Defendant") and states as follows:

## PRELIMINARY STATEMENT

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2.      According to Defendant's website, Defendant is "a contact center that sells and services hundreds of thousands of people who want to go on vacation.  [They] do this through [their] travel brands where customers can book their vacation through one of [their] travel advisors or online."[1]

---

[1]*See* https://worldtravelholdings.com/about/ (last visited September 19, 2023).

3.      In order to provide the aforementioned services, Defendant employs hourly (non-exempt) representatives and agents with a number of job titles, including but not limited to Customer Service Representative, Travel Professional, and Full Service Agent (hereinafter collectively referred to as "Agent" or "Agents").

4.      Regardless of the specific job title all Agents: are paid on an hourly basis; are classified as non-exempt employees; use the same timekeeping system(s); use many (if not all) the same computer programs; are subject to the same relevant timekeeping and attendance policies; and have the primary job duty of providing assistance to customers.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Agents, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.  *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), available at *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.* One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.      The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

7.      Defendant does not compensate its Agents, like Plaintiff, for all work performed. Instead, Defendant required its Agents to perform compensable work tasks before their scheduled

shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system.  This corporate policy and practice results in Agents not being paid for all time worked.

8.      In particular, Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only clocked in and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "available" when their scheduled shifts began.

9.      In addition to this pre-shift work, Defendant also required its Agents to perform unpaid mid-shift work during their unpaid meal periods.  The Agents' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

10.     Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact, trained and required, its Agents to complete this unpaid work.

11.     Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

12.     Additionally, Defendant failed to compensate Plaintiff and Agents at the appropriate overtime rate using the FLSA's "regular rate" calculation.  More specifically, Defendant failed to include shift differentials and/or other non-discretionary remuneration paid to Plaintiff and Agents in calculating their correct overtime premiums as required by the FLSA 29 C.F.R.§§ 778.108-109.  Instead, Defendant only paid Plaintiff and Agents an overtime premium calculated from their base hourly rates.

13.     The individuals Plaintiff seeks to represent in this action are current and former Agents who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of law.

14.     Defendant knew or could have easily determined how long it takes its Agents to complete the pre-shift start-up/log-in process and the lunchbreak duties and could have properly compensated Plaintiff and other Agents for the work that they performed, but did not. Furthermore, Defendant knew or could have easily determined Plaintiff's appropriate overtime rates, and Defendant could have properly compensated Plaintiffs at those rates, but deliberately chose not to.

15.     As a result of Defendant's willful failure to compensate Plaintiff and all similarly situated employees at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§201 et seq., including 29 U.S.C. §§ 207(a)(1), 215(a) and 29 C.F.R. §§778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

16.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly agents who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

17.     Defendant is liable for its failure to pay its Agents for all work performed and for hours worked in excess of 40 per week.

18.     Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre- and mid-shift work performed for Defendant, and for all hours worked

in excess of 40 per week at 1.5 times their regular rate of pay, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, et seq.

20.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21.     This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiff and Defendant reside in different states.

22.     Defendant's annual sales exceed $500,000 and it has more than two employees; thus, the FLSA applies in this case on an enterprise basis.  Defendant's Agents engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

24.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Massachusetts and is headquartered in the state of Massachusetts.

25.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant conducts business in this District, and because a substantial portion of the events that give rise to Plaintiff's claims occurred in this District.

26.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## INTRADISTRICT ASSIGNMENT

27.     A substantial part of the events or omissions which give rise to the claims occurred in Middlesex County, and therefore this action is properly assigned to the Eastern Division.

## PARTIES

28.     Plaintiff Phaedra Preston, is a resident of Dyersburg, Tennessee.   Plaintiff worked for Defendant as an hourly remote Agent from approximately September 2022 until approximately July 2023.  Defendant compensated Plaintiff through the payment of an hourly rate, most recently at $15.00 per hour.  Plaintiff signed a consent to join this collective action lawsuit, *Exhibit B*.

29.     Additional putative Collective members were or are employed by Defendant as remote Agents in other states during the past three years and their consent forms will also be filed in this case.

30.     According to Defendant's website:

No matter what we are selling or servicing, our mission is to deliver a remarkable experience through providing superior customer service.  It's the personalized experience we provide that keeps our customers coming back and puts us in a league of our own. [2]

31.     Defendant is a Delaware corporation with its headquarters and principal place of business located in Wakefield, Massachusetts.

---

[2] *See* https://worldtravelholdings.com/about/ (last visited September 25, 2023).

32.      Upon information and belief, Defendant has employed hundreds of Agents – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

33.      Defendant maintains call centers and allows for remote work.  Defendant provides vacation sales and reservation support to its customers throughout the United States.[3]

34.      Defendant has employed hundreds of Agents over the past three years at its call centers and remotely to handle consumer and customer phone calls concerning various issues.

35.      Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

36.      Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

37.      Defendant paid its Agents at varying hourly rates.

38.      Throughout Plaintiff's employment with Defendant, on occasions where she worked overtime, she also earned a shift premium and other non-discretionary bonuses.

39.      In addition, to the base rate of pay and shift differentials, Defendant incorporates various routine and non-discretionary bonuses into its payment structure.  For example, Defendant promised hourly employees Stars Fringe and Vendor Incentive bonus payments, and other forms of remuneration.

---

[3]  *See*  https://careers-wth.icims.com/jobs/2121/customer-care-representative/job  (last   visited September 25, 2023).

40.    Plaintiff and all similarly situated employees were eligible for, and regularly received, these various routine and non-discretionary bonuses in addition to their hourly base rate and shift differentials.

41.    However, Defendant failed to include the shift differential pay and non-discretionary bonuses into the regular rate of pay for Plaintiff and all others similarly situated when calculating their regular rate of pay and resulting overtime rate premium.  As a result, Defendant did not pay the proper overtime rate under the FLSA.

42.    Defendant's Agents typically worked five days each week and up to forty (40) or more hours per week.

43.    In order to perform their job duties, Plaintiff and Defendant's Agents were required to use a computer and a variety of essential and indispensable computer programs, applications, and servers. [4]

44.    Prior to being hired, Agents received an offer from Defendant that set forth the requirements of an Agent, the job duties, and the offered rate of pay.

45.    Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

46.    Plaintiff received such an offer from Defendant to serve as an Agent, and she accepted Defendant's offer with the understanding that her base wage rate, most recently $15.00 per hour, would be paid as promised.

47.    Plaintiff performed under the contract by carrying out her job duties and responsibilities.  More specifically, Plaintiff would work with Defendant's customers to make

---

[4] *See* https://worldtravelholdings.com/work-home/ (last visited September 25, 2023).

reservations, book cruises, change existing reservations, and address customer inquiries and issues about cruise reservations both new and already booked.  The aforementioned customer services were provided via inbound calls and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information.  Plaintiff additionally performed the required unpaid off-the-clock work explained below.

48.    Once hired, Defendant provided all Agents, like Plaintiff, with, *inter alia*, training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendant's Agents received was substantially, if not entirely, the same and all Agents were subject to the same and/or substantially similar policies and quality assurance reviews.

49.    At the start of each workday, Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiff and all other Agents are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete or nearly complete and they place themselves in "available".

50.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

51.    Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the Agents' clock-in times and "available" hours.  Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, Agents. This discipline included, but was not limited to, assigning Agents pre-determined point values,

issuing write-ups and final notices, and termination.

52.     Plaintiff and other similarly situated Agents are instructed to be in "available" the moment their scheduled shift starts. This requires Defendant's Agents to be logged in and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they can be prepared to take calls the moment their shift begins. During the boot-up and login process, Defendant's Agents often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

53.     All of Defendant's Agents use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are an integral and important part of the Agents' work and they cannot perform their jobs without them.

54.     The pre-shift off-the-clock time Plaintiff and all other Agents spend booting up and logging into their computers directly benefits Defendant and is integral and indispensable to the Agents' job responsibilities.

55.     Defendant's Agents also perform off-the-clock work when leaving and returning from lunch, for example undergoing some or all of the computer boot-up process mentioned above, and when they experience technical difficulties.

56.     Despite knowing Plaintiff and all other Agents perform this pre- and mid-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

57.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

58.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Agents experience downtime due to technical issues.

59.     Because Defendant requires its Agents to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spend working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

60.     Despite its ability to track the amount of time Plaintiff and other Agents spend in connection with the pre- and mid-shift boot-up and login process and technical downtime, Defendant failed to pay Plaintiff and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

61.     Plaintiff, and similarly situated Agents, regularly worked overtime and non-overtime hours for which they were not paid the appropriate overtime rates, in breach of Defendant's contracts with its Agents.

62.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

**A.  <u>Pre-Shift Off-the-Clock Work</u>**

63.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Agents are required to perform daily off-the-clock tasks such as turning on or warming-up their computer; waiting for the computer to turn on; logging into the VPN using their username and password; and then starting up and logging into various secure, computer networks and software programs/applications, such as ADP and Euclid, to access information.

64.     Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "available" at the start of their shifts.

65.     Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions.  However, Plaintiff and all other Agents are not actually "clocked in" for their shifts until *after* the computer boot-up and login process is complete or nearly complete and they place themselves in "available" mode.

66.     The pre-shift boot-up and login process generally consisted of the following steps:

a.     The Agents turned on their computer;

b.     After waiting for the computer to boot up, the Agents were prompted to log in to Windows using their username and password;

c.     Upon turning on their computer and logging into Windows the Agents then had to connect to Defendant's Virtual Private Network ("VPN");

d.     After the Agents connected to Defendant's network, they opened Ring Central, the system used for making and receiving calls and where Agents marked themselves "available" or "unavailable";

e.     After opening Ring Central, but not yet marking themselves as "available", Agents opened CX1;

f.     The Agents then logged into Microsoft Office;

g.     The Agents would then open Microsoft Teams;

h.     Following that the Agents would open Alvaria, the program used for scheduling requests such as time off;

i.     After the Agents opened Alvaria they would proceed to open Euclid, Defendant's customer base where the Agents can view all flights, cruises, etc.;

j.     The Agents would then open ADP to enable them to clock in and out for their shift;

      k.     The Agents would then clock in using the previously opened ADP program and then place themselves in "available" through the Ring Central program and begin receiving calls at the moment their shift began.

67.     The above tasks take substantial time on a daily basis with said time ranging from ten (10) to fifteen (15) minutes per day, and even longer when Defendant's computer networks and programs were not working properly.

68.     The Agents frequently encountered technical problems while performing this boot-up and login process, which often caused the process to take longer than 30 minutes.

69.     Defendant's Agents did not actually clock in for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for at least ten (10) to fifteen (15) minutes (or more) before each shift for which they were never compensated.

70.     If Agents started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "available" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

71.     To the extent Defendant allowed its Agents to clock in a certain amount of time before the start of their shifts (*e.g.*, up to 5 minutes) to allow for the boot-up and login process, this grace period was exceeded by the amount of time it *actually* took Agents to complete the process. Defendant had such a grace period. Agents were allowed to clock in early up to five (5) minutes, however, they did not start getting paid until they placed themselves in "available".

72.     Defendant's Agents were only compensated for the time spent on the phone or in "available" and if, at the end of a shift, an Agent's recorded clock-in hours exceeded their recorded "available" hours, Defendant would adjust the Agent's time records to match the amount of time the Agent spent in "available", in other words, time on the phone.

73.     Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

74.     Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "available" and clocked in on time.

75.     Defendant also had express and constructive knowledge that its Agents frequently experienced technical problems with their computers or phones during the boot-up and login process.

76.     Defendant's policies and practices discouraged its Agents from recording all time worked.

77.     The unpaid off-the-clock work performed prior to each shift by Plaintiff and other Agents is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Agents.

**B.  Meal-Period Off-the-Clock Work**

78.     Defendant provided its Agents with a scheduled 1-hour unpaid meal period during each work shift.

79.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period.  29 C.F.R. § 785.19(a) states:

> **Bona fide meal periods.** Bona fide meal periods are not work time.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The

employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.  (emphasis added).

80.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (*Fact Sheet #64* at p. 2).

81.     However, Defendant also required Plaintiff and all other Agents to perform off-the-clock work during these unpaid meal periods, including clocking out and spending approximately two (2) to three (3) minutes logging off and then returning from the 1-hour meal period approximately ten (10) to fifteen (15) minutes early in order to have enough time to log back in prior to resuming their shifts.  This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went uncompensated.

82.     Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

83.     Defendant had express and constructive knowledge that its Agents took unpaid meal periods and that its Agents performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were clocked in and in "available" on time for their shifts to resume.

84.     The unpaid off-the-clock work Plaintiff and other Agents perform during their lunch breaks and prior to clocking back into Defendant's timekeeping system is compensable,

directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Agents.

### C. Technical Down Time

85.    Additionally, in the course of performing their jobs, Plaintiff and other Agents regularly experience technical problems with their computer systems, which log them out of the timekeeping systems and cause them to redo some or all of the boot up process.

86.    In these situations, the Agents can spend up to thirty (30) minutes or longer working with Defendant's technical team to resolve the problem(s).

87.    Defendant did not compensate Plaintiff and other Agents for technical downtime.

88.    Defendant is aware of the time Agents spend experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant can pay Agents for this time, but does not.

### D. The Off-the-Clock Work Results in Viable "Gap Time" Claims

89.    "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA).

90.    Plaintiff, and similarly situated Agents, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

91.    During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

**E.  Exemplary Pay Period to Illustrate Pre-Shift and Meal-Period**

92.    Defendant paid Agents on a biweekly basis.  The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of May 14, 2023 – May 27, 2023:

- Plaintiff was paid at a rate of $15.00 per hour for her 80.00 regular hours and $22.50 per hour for her 17.42 overtime hours.

- With unpaid pre-shift and meal-period time, in a range of twenty-two (22) to thirty-three (33) minutes per shift, at ten shifts per pay period, Plaintiff should have been paid an additional two hundred twenty (220) to three hundred thirty (330) minutes at her overtime rate of $22.50 during the pay period.

**Exhibit C**, Preston Pay Stub.

**F.  Defendant Benefitted from the Agents' Off-the-Clock Work**

93.    At all relevant times, Defendant has required and directly benefitted from the off-the-clock work performed by Plaintiff and all other Agents in connection with the pre- and mid-shift activities described above.

94.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

95.    At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents spend in connection with the pre- and mid-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

96.     At all relevant times, Plaintiff and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

97.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Agents in order to pressure them into performing pre- and mid-shift work off-the-clock.

98.     Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

99.     Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to fifteen (15) minutes per day, but Defendant prohibited Agents from clocking into the timekeeping software and marking themselves as "available" before the start of the scheduled shift while simultaneously requiring the Agents to be phone/training ready the moment their shifts begin.

100.    Defendant similarly instructed its Agents to have all work applications and systems fully loaded the moment their lunch breaks conclude so they can be prepared to field calls.

101.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the Agents of wages owed for the pre- and mid-shift activities they performed.

102.    During the weeks that Agents work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

103.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

104.    Defendant has known or should have known that the time spent by Plaintiff and other Agents in connection with the pre- and mid-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith by not compensating the Agents for the time at issue in this action.

105.    Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**G.  Regular Rate of Pay**

106.    As non-exempt employees, Plaintiff and all similarly situated employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

107.    For example, Plaintiff's paystub for the pay period 5/14/2023 through 5/27/2023 shows a base hourly rate of $15.00, and a corresponding overtime rate of $22.50, which is 1.5 times the stated base hourly rate. **Exhibit C**. On this paystub, Plaintiff also earned $1.74 in shift differentials (labeled as "Incentive Ot") and non-discretionary bonuses of $10.00 and $19.48 (labeled as "Stars Fringe" and Vendor Incentiv", respectively). *Id*. However, her overtime rate does not account for the shift differential or bonus compensation and, therefore, Defendant violated the FLSA.

108.    Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

109.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

110.     Defendant's shift differentials and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

111.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

112.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

113.     Plaintiff's "total remuneration" included not only her hourly pay, but also any shift differentials and various routine and non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502

expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

114.    However, Defendant failed to incorporate these other remunerations into its hourly employees' regular hourly rate calculation, resulting in a *prima facie* violation of the FLSA.

115.    Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and those similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

116.    Plaintiff and all similarly situated employees have regularly worked in excess of 40 hours a week and have been paid overtime for those hours but at a rate that does not include Defendant's non-discretionary bonuses and shift differential pay as required by FLSA.

117.    Defendant was required to pay Plaintiff the federally mandated overtime premium rate of 1.5 times her regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.  However, Defendant only paid Plaintiff 1.5 times her base hourly rate as her overtime premium, which is lower than 1.5 times her regular rate.

118.    Thus, Defendant failed to properly calculate the regular rate and violated the FLSA.

119.    Defendant paid Plaintiff, and its other hourly employees, additional non-discretionary remuneration that Defendant also failed to include in the regular rate calculation.

120.     To the extent that any of Defendant's premium compensation paid to Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

121.     In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

122.     Defendant knew or could have easily determined Plaintiff's appropriate overtime rates, and Defendant could have properly compensated Plaintiff at those rates, but deliberately chose not to.

123.     Plaintiff and all similarly situated employees are eligible for, and regularly receive, shift differential compensation and other non-discretionary remuneration in addition to their base hourly rate. *See e.g.*, **Exhibit C**, Plaintiff's June 2, 2023 Earnings Statement.

124.     As a result of these FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

125.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly agents who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

126.    Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and others similarly situated.

127.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

128.    Resolution of this action requires inquiry into common facts.

129.    Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid at the appropriate rate for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

130.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

131.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

   b.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work, such as technical downtime time; the pre- and mid-shift boot-up process;

   c.    Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant; and

      d.     Willfully failing to include shift differential and non-discretionary bonuses into the required regular rate calculation.

132.     Defendant is aware, or should have been aware, that federal law requires them to pay Plaintiff and the proposed FLSA Collective members an appropriate overtime premium for all hours worked in excess of forty (40) per workweek.

133.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

134.     Upon information and belief, Defendant utilized a centralized payroll system that calculated overtime pay for all similarly situated employees in the same or similar manner.

135.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; (d) they were eligible for and did receive the same shift premium pay and non-discretionary bonuses, but such pay was not calculated as part of their regular rate as required by FLSA; and (e) their claims are based upon the same factual and legal theories.

136.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre and mid-shift off-the-clock work,  the amount of technical downtime owed to each employee, whether Defendant properly calculated Plaintiff and the proposed FLSA Collective members' regular rate and corresponding overtime rates – does not vary substantially among the proposed FLSA Collective members.

137.     There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

138.     These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

139.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216 (b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

140.     All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

141.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

*All current and former hourly Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

142.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class

members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

143.    There is a well-defined community of interests among the Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable;
>
> b.    Whether the mid-shift time Rule 23 Nationwide Class members spend rebooting Defendant's programs, applications, and networks during their unpaid lunch breaks before they return from their breaks is compensable;
>
> c.    Whether the technical downtime Rule 23 Nationwide Class members spend troubleshooting is compensable;
>
> d.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and
>
> e.    Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

144.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

145.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

146.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

147.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

148.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

149.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

150.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

151.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

152.    At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

153.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

154.     Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

155.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

156.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

157.     The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's shift premiums do not fall into any of those exceptions.

158.     Defendant failed to include shift differential pay and non-discretionary bonuses into the regular rate of pay for Plaintiff and all similarly situated employees when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendant's employees are working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

159.     At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the proposed FLSA Collective members the legally required amount of overtime compensation at the appropriate overtime rates for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

160.    At all times relevant to this action, Defendant required Plaintiff and the proposed FLSA Collective members to perform no less than twenty-two (22) minutes and as much as thirty-three (33) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

161.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

162.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential and non-discretionary bonuses where applicable.  29 U.S.C. § 207.

163.    Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes Plaintiffs and the proposed FLSA Collective members to perform their pre- and mid-shift off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities, but did not.

164.    As a result of Defendant's willful failure to compensate Plaintiff and the proposed FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

165.    Plaintiff and all others similarly situated are entitled to back pay, liquidated

damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

166.     Defendant deliberately chose not to compensate Plaintiff and the proposed FLSA Collective members at the appropriate overtime rates.

167.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

168.     As a result of Defendant's violations of FLSA, Plaintiff and all similarly situated employees are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received during the relevant time period and the overtime they did receive during the time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendants are statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

169.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

170.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

171.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they

worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

172.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares and maintains as part of its regular business activities.

173.    For example, Defendant offered to compensate Plaintiff at a minimum of $15.00 per hour if she agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's offer and performed her duties as an Agent in reliance on the offer.

174.    Defendant breached its contractual promises by failing to pay Agents at their fixed, pre-agreed upon hourly rate for all of the hours worked.

175.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $15.00 per hour within the applicable period.

176.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work and technical downtime described herein.

177.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

178.     Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

179.     Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

180.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

181.     As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

182.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

183.     This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

184.     At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

185.     Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

186.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

187.     Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

188.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

189.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

190.     Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

191.     As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiff requests the following relief:

a.     An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract

claim (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

e.    An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.    An Order declaring Defendant's violations of the FLSA were willful;

h.    An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.    An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

j.    An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.    An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.    An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 16, 2023

Respectfully Submitted,

*/s/ Benjamin Knox Steffans*
Benjamin Knox Steffans (BBO# 568535)
Steffans Legal, PLC
10 Wendell Ave. Ext. Suite 208
Pittsfield, Massachusetts, 01201
Telephone: 413-418-4176
bsteffans@steffanslegal.com

Kevin Stoops (SBN 332200)*
Kathryn E. Milz (IL ARDC 6297213)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff, the FLSA Collective
and the putative Class*