UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| **PHAEDRA PRESTON,** individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br>v.<br><br>**WORLD TRAVEL HOLDINGS, INCORPORATED**,<br><br>　　　　　　Defendant. | CIVIL ACTION<br><br>Case No.: 1:23-cv-12389<br><br>Hon. Julia E. Kobick<br><br>Leave to File Granted on January 18, 2024 |

**PLAINTIFF'S REPLY IN SUPPORT OF PRE-DISCOVERY MOTION
FOR CONDITIONAL CERTIFICATION [ECF NO. 19]**

### I.   INTRODUCTION

Defendant's response to Plaintiff's Motion for Conditional Certification ("Opposition") [ECF No. 28], entirely disregards the evidentiary standards applied in FLSA conditional certification motions within this Circuit. The First Circuit has endorsed the lenient conditional certification standard, which applies a two-stage analysis to determine whether Plaintiff and the proposed FLSA collective are "similarly situated" for purposes of sending notice. In its Opposition, Defendant asks this Court to side-step that process and, instead: (1) improperly analyze the credibility and merits of Plaintiff's claims; and (2) prematurely delve into whether individualized inquiries are necessary to adjudicate Plaintiff's claims. As explained herein, none of Defendant's arguments provide an appropriate basis to deny the instant motion.

To the contrary, Defendant's Opposition – including the attached declarations – actually bolster Plaintiff's argument that the potential opt-ins are "similarly situated" and that collective notice is appropriate. Specifically, Defendant's Opposition establishes that Plaintiff and all other Agents are similarly situated by way of the following admissions: 1) all Agents are required to use a computer to perform their job duties; 2) all Agents received the same or substantially similar training and were subject to the same or substantially similar policies; 3) all Agents were paid an

1

hourly wage and classified as non-exempt employees; 4) all Agents used the eTime program for purposes of recording their hours worked; and 5) all Agents performed off-the-clock work prior to clocking in. As such, there is no question that Plaintiff satisfies the lenient burden placed upon her at the first stage of the conditional certification process.

## II. LEGAL ARGUMENT

### A. Courts in the First Circuit Follow the Well-Established, "Fairly Lenient" Two-Step Approach When Considering Motions for Conditional Certification

The standard at the Notice juncture is a "fairly lenient" one, and usually results in conditional certification. To satisfy the burden necessary for conditional certification at the "notice" stage plaintiffs may show ***either***: (1) that their job positions and duties are similar to those positions held by the putative class members, *Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 182 (D. Mass. 2016); ***or*** (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation. *Trezvant v. Fidelity Employer Servs. Corp.*, 434 F.Supp.2d 40, 43 (D. Mass. 2006). Plaintiff is not required to prove an *actual* FLSA violation at this stage.

Plaintiff has pled allegations and provided supporting evidence, bolstered by Defendant's own declarations, satisfying the requirements of both pathways for FLSA conditional certification. That evidence, when coupled with the allegations in Plaintiff's Complaint and Motion, eliminates any doubt that a similarly situated collective of Agents exists who were all subject to the same or similar policies and procedures.

### B. Plaintiff has Demonstrated that all Agents are Similarly Situated

Plaintiff has sufficiently demonstrated that her job position and duties as an Agent are similar to those positions held by the putative collective members. *Cunha*, 221 F. Supp. 3d at 182 (plaintiff's allegations and supporting evidence that employees' "job duties and responsibilities appear to remain the same," coupled with same job description across putative collective class "is sufficient to satisfy the minimal showing necessary to justify issuing notice"). Plaintiff's declaration and supporting exhibits, coupled with the factual allegations in the Complaint,

demonstrate that Defendant's Agents had the same general job descriptions, duties, and terms of employment, and were paid on an hourly basis. (ECF No. 28, pp. 2-4, 8; ECF No. 28-1, ¶¶ 2-11; *see generally* ECF No. 1, Compl.; *see generally*, ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl; ECF Nos. 28-6 – 28-14, Ex. E – Ex. M ).

### i. All Agents Received the Same or Substantially Similar Training, Were Subject to the Same or Substantially Similar Company Policies and Procedures, and Were Required to Comply With Company Metrics

Defendant admits that it trained all non-exempt Agents at the time of hire on company policies and procedures. (ECF No. 28, p. 3; *see also* ECF No. 19 at ¶¶ 10, 48, 63, 98; ECF Nos. 19-4 - 19-5, Preston & Markovitch Decl. at ¶¶ 6, 17). The size of Defendant's training groups varied, but can be up to at least 60 employees at a time. (ECF No. 19-5, Markovitch Decl. at ¶ 34). All of Defendant's training is conducted remotely for a minimum of 5 weeks from 10 am to 7 pm. (ECF Nos. 19.13 – 19.14). Following training, trainees worked for Defendant in remote and in brick-and-mortar call center settings across the United States. (ECF No. 46-1, Ex. 6, pp. 70, ¶ 6; ECF No. 46-1, Ex. 7, pp. 79-80, ¶ 5; ECF No. 46-1, Ex. 8, p. 88-89, ¶¶ 4-5).

As part of new-employee orientation, all Agents were provided with training on Defendant's computers, programs and uniform company policies. (ECF No. 28, p. 3, *see also*, ECF No. 28-1, ¶¶ 4-6). Defendant taught and instructed all Agents the Company's Payroll Policy, as well as the eTime timekeeping program, which Defendants used for compensation purposes. (ECF No. 28, p. 3-4; ECF No. 28-1, ¶¶ 4-7; ECF No. 28-1, Ex. 1; *see also* ECF No. 19 at ¶¶ 48, 52, 63, 98-100; ECF Nos. 31-4 – 31-6, Preston & Markovitch Decl. at ¶¶ 6, 17). In addition, Defendant's Agents are subject to schedule adherence and attendance metrics that track the amount of time Agents spent clocked in but were unavailable to take calls. (ECF No. 1 at ¶¶ 51, 64, 70, 97; ECF Nos. 31-4 – 31-6; Jackson & Misner Decl. at ¶¶ 6, 12, 14-15, 26).

The similarity among Defendant's Agents allowed Defendant to provide its uniform training, as well as require the employees to follow the same or substantially similar policies, procedures, and metrics.

### ii. All Agents Were Classified as Non-exempt, Paid an Hourly Rate, Required a Computer to Perform Their Job Duties, and Used The eTime Timekeeping System

The Parties do not dispute that all Agents:

1. Were non-exempt employees (*see* ECF No. 28, p. 2 (noting that the Agents are seek to "non-exempt" under the FLSA and, therefore eligible for premium overtime pay for work in excess of forty hours in a week); ECF No. 28-1, ¶¶ 2,3; ECF No. 1 at ¶ 3-4, 35, 96, 106, 154; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl. at ¶¶ 2, 5);

2. Were paid on an hourly basis (*see* ECF No. 28, p.3; ECF No. 1 at ¶¶ 3-4, 28, 35, 37, 39, 45, 96, 107; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl. at ¶ 2, 5, 27-29); and

3. Regularly worked forty (40) or more hours per workweek (ECF No. 28-1, ¶¶ 2-3; ECF No. 19-4, Preston Decl. at ¶¶ 5, 16, 32; ECF No. 19-5, Misner Decl. at ¶¶ 5, 16, 33).

It is also uncontroverted that each of the Agents relied on a computer to perform their job duties. (*See* ECF No. 28, p. 2 (noting that "Plaintiff was a Full Service Agent who worked remotely from her home […]" ); *id*., p. 3 (noting that as part of their work for Defendant, Agents utilize computers and various computer programs to provide customer service and to sell Defendant's products."); ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl. at ¶¶ 6-7, 9-10, 14, 17, 18).

All Agents exclusively used the eTime program for timekeeping purposes, and Defendant utilized the eTime clock-in and clock-out times for determining employee compensation. (ECF No. 28, pp. 3-4; *id*., p. 3 ("At the beginning of their employment, World Travel provides Agents training regarding these computer systems, as well as regarding various Company policies.").

### iii. All Agents, Regardless of Work Location, Job Title, and Job Description, Performed Off-the-Clock Work Before They Clocked In at The Start of Their Scheduled Shift and Before and After They Clocked In and Out for Their Scheduled Meal Period

Defendant admits that all Agents, regardless of work location, job title, and job description performed pre- and mid-shift off-the-clock work every shift. (ECF No. 28, pp. 3-4; ECF No. 28-2) Principally, the Parties agree that all Agents performed at least some of the following pre- and

mid-shift off-the-clock work daily:

- Turing on their computer;
- After waiting for their computer to boot-up, Agents logged into Windows using their username and password;
- Upon turning on their computer and logging into Windows Agents connected to Defendant's VPN;
- After Agents connected to Defendant's network they opened Ring Central;
- After opening Ring Central", Agents opened CX1;
- The Agents then logged into Microsoft Office;
- The Agents would then open Microsoft Teams;
- Following that the Agents would open Alvaria, used for scheduling requests such as time off;
- Agents would then open ADP ("e-Time") to enable them to clock in and out for their shift;
- Agents then clocked in using the e-Time program and placed themselves in "available" through the Ring Central program and began receiving calls. (ECF No. 28 pp. 3-4; ECF No. 28-1, pp. 2-3; ECF No. 1, ¶¶ 66, 81; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 10, 25).

In fact, many of the programs identified in the declarations submitted by Defendant mirror the programs identified in the declarations submitted by Plaintiff. For instance, VPN, Ring Central, ADP (e-Time), and the Windows Operating System are all programs listed in both Plaintiff's and Defendant's declarations. And while there may be some variation from Agent to Agent in the programs used, Defendant states all "Hourly employees must be clocked in through eTime while working so that we can properly pay for all time worked." (ECF No. 28, p. 3; Doc. 28-1, ¶ 6).

Defendant's contention that the putative FLSA Collective is not similarly situated because some of the employees (i.e. Defendant's Declarations, *see generally* ECF No. 28-2) allegedly did not have the "exact" same experience is at best a red herring.[1] As explained herein, all Agents had

---

[1] Despite it assertion that some variation exists among Agents, Defendant's own declarations make clear that the Agents engage in the same or similar log-in and boot-up processes, are subject to same or similar policies, and the only issue in dispute is how much time is spent on those processes. (ECF No. 28, pp. 3-4, 8; ECF No. 28-1, ¶¶ 2-11; ECF No. 1, ¶ 66; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 10). It is not necessary for Plaintiff to establish that all Agents are identical or hold identical positions in order to secure conditional certification:

> The defendants embark on a discursive survey of minutiae relating to the potential plaintiffs' job descriptions … They contend that these variations in the plaintiffs'

5

to perform work off-the-clock every shift because they used the eTime timekeeping program that was accessible only through their computers after logging in. (ECF No. 28, p. 3; Doc. 28-1, ¶ 6). The Parties even agree that loading and logging into all of these essential work programs takes several minutes every day.  (ECF No. 28, pp. 3-4, 8; ECF No. 28-1, ¶ 3; ECF No. 1, ¶¶ 67-69, 81, 92, 99, 160; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 12-13, 20, 25).  Defendant's own declarations even establish *some* off the clock work occurred on a regular basis.  For example, Janet Curtis, Kelly McClure, and Tia Laywell all state in their declarations that it takes them at least two (2) minutes every day to complete the log-in/boot-up process as described by Defendant. (ECF No. 28-2, McClure & Laywell Decl., ¶ 3).

Thus, the only significant individual inquiry that exists is how much off-the-clock work was performed every shift, not whether it was performed.  And that is an issue better left for the merits phase of this case.

### iv. Plaintiff Has Demonstrated that All Agents are Subject to the Same, Unified Policy, Plan, or Scheme that Forms the Basis of the Alleged FLSA Violation.

Defendant contends that Plaintiff fails to demonstrate Agents are subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation. (ECF No. 28, p. 7). In the context of wage and hour cases, it is rare that a sophisticated employer distributes a facially unlawful policy to its employees. Instead, it is far more common for lawful policies to be implemented in an unlawful manner. Plaintiff has sufficiently demonstrated that Defendant employs uniform and company-wide pay practices with respect to its hourly, non-exempt Agents; and that Defendant ignored the law by refusing to pay its hourly, non-exempt Agents for all off-

---

> circumstances render the dispute unmanageable as a collective action. But the plaintiffs need not show that they are identically situated in every detail in order to proceed collectively. Here, the plaintiffs all work in a virtual or remote call center environment, they all provide the same basic service . . . and they all allege the same basic factual and legal premises in support of their unpaid overtime claims.

*Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829, 844 (E.D. Mich. 2016), *rev'd and remanded on other grounds*, 900 F.3d 293 (6th Cir. 2018).

the-clock pre-shift work – even where Defendant knew the Agents were performing at least 90 seconds per day of off-the-clock work (ECF No. 28, p. 8, fn. 1). Accordingly, Plaintiff has readily satisfied the elements necessary for conditional certification.

Plaintiff has alleged and provided substantial evidence demonstrating that Agents had substantially similar duties regardless of their job titles. (ECF No. 1 at ¶¶ 3-4, 13, 43, 47-54, 63-73, 81; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 4, 6-7, 9-12, 14, 25-26). Additionally, Defendant's pay policies and practices, as well as the nature of Agents job duties, were substantially the same. (ECF No. 1 at ¶¶ 3-4, 13, 43, 47-54, 63-73, 81; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 4, 6-7, 9-12, 14, 25-26;). Further, the nature of Defendant's log-in and boot-up processes did not materially vary among Agents. (ECF No. 1 at ¶¶ 3-4, 13, 43, 47-54, 63-73, 81; ECF Nos. 19-4 – 19-5, Preston & Markovitch Decl., ¶¶ 4, 6-7, 9-12, 14, 25-26; ECF No. 28, pp. 3-4; ECF No. 28-1, ¶¶ 7-10; Doc. 28-2). This fact is bolstered by Defendant's published Job Descriptions and submitted declarations, which demonstrate that, no matter the job title, Agents had similar job duties and were subject to uniform policies and procedures. (ECF Nos. 19-6 – 19-14, Ex. F – M to Plaintiff's Cond. Cert. Motion; ECF No. 28-2).

Defendant incorrectly argues that conditional certification must be denied based upon Plaintiff's description of an "(incredibly) long and arduous log-in process", and by comparison "the swift process attested to by Defendant's other employees […]" and thus, Agents are not subject to "a single decision, policy, or plan that violated the law." (ECF No. 28, p. 8). Defendant relies heavily upon *Wright v. Liberty Mutual Group, Inc.,* 2023 US Dist. LEXIS 125841 (D. Mass. July 21, 2023) in support of this notion.

In *Wright* the Court granted conditional certification for a collective of call center agents based in a single location where the two named-plaintiffs were physically employed. *Id* at *12. In doing so the Court reasoned that the two plaintiffs had not provided any evidence to support their believe that employees at other locations or working remote were subject to the same policies, procedures or practices imposed at their location. *Id*. at *9-10. It is plainly evident that the same facts and reasoning are not present in the instant case. Here, both Plaintiff and the Opt-in Plaintiff,

7

in addition to **every single** declarant tendered by Defendant, worked remotely. Additionally, Defendant's own policies apply uniformly to all hourly employees regardless of location.

Defendant also contends that the *Wright* court held that job descriptions were insufficient evidence of tasks performed and off-the-clock work due to a common policy where the defendant tendered multiple declarations establishing "significant variations" among and between the different call centers and agents. *Id.* at * 11. The "significant variations" alleged in *Wright* are not consistent with the evidence presented in the instant litigation. Even if this Court were to discount Defendant's published FAQs and Job Descriptions, simply looking to Defendant's proffered declarations, wherein each declarant mirrors the same log-in and boot-up process, using the same programs, in conjunction with Plaintiff's evidence is more than enough to meet the "fairly lenient" standard enlisted at this stage. (ECF No. 28, pp. 2-4; ECF No. 28-1, ¶¶ 3-11; see generally, ECF No. 28-1). "At the first step, a court need only make a preliminary finding that the plaintiffs are similarly situated. *Gardner v. Fallon Health & Life Ins. Co., Inc.*, 2021 WL 4459525, at *3 (D. Mass. Sept. 29, 2021) (citing *Melendez Cintron v. Hershey P. R., Inc.*, 363 F. Supp. 2d 10, 16 (D. P.R. 2005)). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 420 (D. Mass. 2018) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N. Y 2007)).

As illustrated above, Defendant's declarants confirm at least ninety (90) seconds to two (2) minutes of off-the-clock work every day. This is a critical admission because while Defendant may view this time as *de minimis*, such a defense is not valid to this motion.[2]

---

[2] Courts across the country routinely use a three factor test to determine whether the *de minimis* doctrine should bar recovery of off-the-clock work: 1) the practical administrative difficulty of recording the time; 2) the size of the claim in the aggregate; and 3) whether the claimants performed the work on a regular basis. *See e.g., Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1042 (10th Cir. 2021); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998). No single factor is determinative in this holistic analysis. *Reich*, 144 F.3d at1333 (stating that the court must "evaluate" these "factors").

In *Peterson*, the Tenth Circuit granted partial summary judgment in favor of the plaintiffs on the

The factual questions of whether one Agent uses an application that another does not, or whether the off-the-clock process takes two or ten minutes, is immaterial to this motion. The pertinent fact is all of Defendant's Agents performed off-the-clock work each and every shift. Thus Plaintiff has demonstrated a unified policy, plan, or scheme that forms the basis of a FLSA violation and this Court should certify a collective of all 2,000 of Defendant's employees. *See Trezvant,* 434 F.Supp.2d at 43; *Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008).

### C. Happy Camper Declarations Are Unreliable, Subject to Coercion, and Should Be Given Little to No Consideration

Defendant relies heavily on "happy camper" declarations, which attempt to refute Plaintiff's claims, challenge various factual assertions, and create the appearance of individualized issues. These declarations are highly unreliable and should be viewed with extreme skepticism. *See e.g.*, *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("['Happy camper'] affidavits are of little use at this juncture ... [T]he Court's function at this stage of conditional certification is not to perform a detailed review of the individualized facts from employees hand-picked by [Defendant]."); *Tinsley v. Covenant Care Servs., LLC*, 2016 WL

---

issues of compensability and the inapplicability of the *de minimis* doctrine. *Peterson*, 15 F.4th at 1049. The Court held that "the amount of time devoted to booting up and logging on "is not so miniscule that it would be difficult to measure." *Id*. at 1044. With regard to the estimated amount of time at issue, the Court accepted the undisputed overall estimate from defendant's expert, which defendant characterized as "2.27 minutes (or less)." *Id*. at 1043. As it pertained to the first balancing factor, the Court held that the defendant failed to establish "any particular administrative barrier to its ability to estimate the amount of time at issue." *Id*. at 1045. As to the second balancing factor, the aggregate amount of time, the Court held that it was appropriate to consider the aggregate claim for each individual and the aggregate claim for all the employees combined. *Id*. at 1046. Finally, as to the third factor, the Court held "every CCR performs the same pre-shift activities before every shift for approximately the same amount of time (depending on location), without fail. Thus, we conclude this factor weighs strongly in the CCRs' favor and against finding the time at issue de minimis." *Id*. 1048.

393577, at *9 (E.D. Mo. Feb. 2, 2016) ("Courts have afforded no weight to 'happy camper' affidavits at the conditional certification phase.").

### D. Defendant's Challenges to Plaintiff's Regular Rate Allegations Seek an Improper Merits-Based Determination by this Court

At this stage in time, Defendant has not refuted that Plaintiff and all other Agents receive compensation that is not included in Defendant's regular calculation. Defendant's only challenges to Plaintiff's claim of a regular rate FLSA violation is that 1) the shift differential compensation is computed into Plaintiff's regular rate of pay in subsequent workweeks; and 2) the other additional compensation Defendant pays to its Agents is not "non-discretionary" compensation that is subject to the FLSA's regular rate requirements. Each of these challenges is merits based and not properly asserted at this stage of the litigation. Here, the Court does "not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented." *Poreda*, 532 F. Supp. 2d at 249 (quoting *Trezvant*, 434 F.Supp.2d at 43). Such determinations are reserved for the second step of this process, after the completion of discovery, where the Court makes a final "similarly-situated" determination by examining a developed factual record. *Poreda*, 532 F. Supp. 2d at 241.

### E. Plaintiff's Proposed Notice is Appropriate

Defendant's objections to Plaintiff's proposed Notice are neither persuasive nor supported by any relevant or binding case law. Plaintiff's proposed Notice is in the form and manner regularly approved by federal courts across the country, throughout this Circuit, and by this Court. Accordingly, Notice should be distributed in the exact form and manner as proposed by Plaintiff.

### III. CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion in its entirety.

Dated: January 25, 2024									Respectfully Submitted,

<div style="margin-left:auto">

/s/ Kevin J. Stoops
Kevin J. Stoops (Michigan Bar # P64371,
California SBN 332200)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com

Benjamin Knox Steffans (BBO # 568535)
Steffans Legal, PLC
10 Wendell Ave., Ext. Suite 208
Pittsfield, Massachusetts, 01201
Telephone: 413-418-4176
bsteffans@steffanslegal.com

*Admitted pro hac vice

*Attorneys for Plaintiff and the Putative Collective/Class Members*

</div>

## CERTIFICATE OF SERVICE

I certify that on January 25, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Kevin J. Stoops
kstoops@sommerspc.com